Filed 5/19/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LOS ANGELES POLICE PROTECTIVE LEAGUE, | B306321 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC676283) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert B. Broadbelt III, Judge. Affirmed.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Deputy City Attorney, Scott Marcus, Senior Assistant City Attorney, Blithe S. Bock, Managing Assistant City Attorney, and Michael M. Walsh, Deputy City Attorney, for Defendants and Appellants.

Rains Lucia Stern St. Phalle & Silver, Richard A. Levine, and Michael A. Morguess for Plaintiff and Respondent.

# INTRODUCTION

California requires law enforcement agencies to investigate complaints against peace officers. (See Pen. Code, § 832.5, subd. (a)(1).)[1] Section 148.6, subdivision (a)(1), makes it a crime to file a knowingly false allegation of misconduct against a peace officer. And section 148.6, subdivision (a)(2), requires law enforcement agencies, before accepting a complaint alleging misconduct by a peace officer, to require the complainant to sign an advisory informing the complainant that filing a knowingly false complaint may result in criminal prosecution.

In 2002 the California Supreme Court upheld section 148.6 against a challenge the statute was an impermissible content-based speech restriction under the First Amendment to the United States Constitution. (*People v. Stanistreet* (2002) 29 Cal.4th 497, cert. den. 538 U.S. 120 [123 S.Ct. 1944, 155 L.Ed.2d 861] (*Stanistreet*)). Three years later, a panel of the United States Court of Appeals for the Ninth Circuit reached a different conclusion. The Ninth Circuit ruled section 148.6 was an impermissible viewpoint-based speech restriction under the First Amendment because the statute criminalized false statements that accused a peace officer of misconduct, but not false statements, made by the officer or a witness during the investigation, that supported the officer. (*Chaker v. Crogan* (9th Cir. 2005) 428 F.3d 1215, cert. den. 547 U.S. 1128 [26 S.Ct. 2023, 164 L.Ed.2d 780] (*Chaker*).)

Until 2013 the City of Los Angeles and the United States were parties to a consent decree in the United States District Court that prevented the City from requiring complainants to

---

[1]     Undesignated statutory references are to the Penal Code.

sign the advisory required by section 148.6. After the consent decree expired, the City continued to not require complainants to sign the advisory. The Los Angeles Police Protective League filed this action against the City and its Chief of Police, Charlie Beck, seeking an injunction requiring them to comply with section 148.6, subdivision (a)(2).[2] Following a court trial, the court entered judgment in favor of the Police Protective League. Concluding it was bound to follow *Stanistreet*, the trial court rejected the City's First Amendment challenge to section 148.6 and enjoined the City from accepting any complaint alleging misconduct by a peace officer unless the complainant has signed the advisory required by section 148.6.

The City appeals, asking us to hold, as the Ninth Circuit held in *Chaker*, section 148.6 is an impermissible viewpoint-based speech restriction. The City correctly points out that the arguments the California Supreme Court rejected in *Stanistreet* are not entirely identical to the arguments the Ninth Circuit accepted in *Chaker*. The City also argues the injunction requires the City to enforce a statute federal courts have found is unconstitutional. That's a real problem. But the Supreme Court's analysis in *Stanistreet* of why section 148.6 does not violate the First Amendment applies to the City's *Chaker*-based arguments here. Because the United States Supreme Court has not ruled section 148.6 or an analogous statute is unconstitutional, we must follow *Stanistreet*. Therefore, we do, and we affirm.

---

[2] We refer to the City of Los Angeles and Beck collectively as the City.

3

# FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Legislature Enacts Section 148.6*

The California Supreme Court in *Stanistreet* explained the circumstances that prompted the Legislature to enact section 148.6:  After "'the Rodney King incident in March 1991, law enforcement agencies throughout the state . . . "revised their citizen complaint procedures to promote greater accountability on the part of their line officers."'" (*Stanistreet*, *supra*, 29 Cal.4th at p. 502.)  But, according to the Legislature, "'a "glaringly negative side-effect [was] the willingness on the part of many of [California's] less ethical citizens to maliciously file false allegations of misconduct against officers in an effort to punish them for simply doing their jobs." [Citation.]  Against this backdrop, the Legislature enacted section 148.6 in an attempt to curb a perceived rising tide of knowingly false citizens' complaints of misconduct by officers performing their duties.'" (*Id.* at pp. 502-503.)

Section 148.6, subdivision (a)(1), states:  "Every person who files any allegation of misconduct against any peace officer, . . . knowing the allegation to be false, is guilty of a misdemeanor."  Section 148.6, subdivision (a)(2), states:  "A law enforcement agency accepting an allegation of misconduct against a peace officer shall require the complainant to read and sign the following advisory, all in boldface type:

"YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICE CONDUCT.  CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CIVILIANS'

4

COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CIVILIAN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

"IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.

"I have read and understood the above statement.

"Complainant _____."

> B.    *A Consent Decree Prevents the City from Requiring Complainants To Sign the Advisory*

In 2000 the United States filed a lawsuit against the City of Los Angeles alleging the City had failed to implement appropriate management practices, resulting in a pattern or practice of unconstitutional conduct that violated title 42 United States Code former section 14141.[3] The following year the

---

[3]    At the time, that section provided: "It shall be unlawful for any governmental authority . . . to engage in a pattern or practice

United States and the City of Los Angeles entered into a consent decree that resolved the lawsuit. Under the decree, the City of Los Angeles and the Los Angeles Police Department agreed to receive complaints against peace officers "in writing or verbally, in person, by mail, by telephone . . . , [by] facsimile transmission, or by electronic mail . . . ." The City of Los Angeles also agreed to receive anonymous complaints and to "prohibit officers from asking or requiring a potential complainant to sign any form that in any manner limits . . . the ability of a civilian to file a police complaint with the [Department] or any other entity." The consent decree ended in 2013.

C.     *The Trial Court Orders the City To Comply with Section 148.6, Subdivision (a)(2)*

In 2017 the Police Protective League—an employee organization[4] that represents peace officers employed by the City—filed this action, seeking a declaration section 148.6, subdivision (a)(2), was "legally valid [and] enforceable." The Police Protective League also sought an order "enjoining the

_____

of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." (See 42 U.S.C. former § 14141, eff. Sept. 13, 1994.) Congress has since renumbered that law as title 34 United States Code section 12601.

[4]     "Employee organization means . . . [a]ny organization that includes employees of a public agency and that has as one of its primary purposes representing those employees in their relations with that public agency" or "[a]ny organization that seeks to represent employees of a public agency in their relations with that public agency." (Gov. Code, § 3501.)

6

[City] from accepting an allegation of misconduct against" peace officers represented by the Police Protective League "without the complainant being required to read and sign" the required advisory.

The parties stipulated at trial that, after the consent decree ended in 2013, the City declined to require complainants filing allegations of police misconduct to sign the advisory required by section 148.6. The Police Protective League called one witness, Officer Steve Gordon, the director of the Police Protective League, who testified that serious complaints against officers may result in the Los Angeles Police Department removing the officers from an assignment pending an investigation. Therefore, Officer Gordon stated, gang members try to "get rid of an officer" by "continually mak[ing] complaints." Gordon testified that false complaints against an officer "could" adversely affect the officer's opportunity for promotion, but that he was not aware whether the police department had ever denied an officer a promotion because of a false complaint. He also testified that, if a complaint against an officer were adjudicated false, it would not affect the officer's ability to transfer to a different unit or division.

In its trial brief the City argued the court should not issue an injunction requiring the City to comply with section 148.6 because the statute violates the First Amendment. Citing *Chaker*, *supra*, 428 F.3d 1215, the City argued the statute was an impermissible content- and viewpoint-based speech restriction because it criminalized knowingly false complaints against police officers, but not "false statements by police officers or witnesses in the same context."

The trial court ruled section 148.6, subdivision (a)(2), was not unconstitutional under the First Amendment. The court

7

ruled the California Supreme Court held in *Stanistreet, supra*, 29 Cal.4th 497 that "section 148.6 falls within all the categories of permissible 'content discrimination' identified by the [United States] Supreme Court . . . ." Recognizing "a split of authority between the California Supreme Court and the Ninth Circuit," the trial court concluded it was bound by the California Supreme Court's decision in *Stanistreet*. The trial court declared section 148.6, subdivision (a)(2), is valid and enforceable and enjoined the City "from accepting an allegation of misconduct against a peace officer without requiring the complainant to read and sign the advisory set forth in Penal Code [section] 148.6, subdivision (a)(2)."[5] The City timely appealed.

## DISCUSSION

A.     *The City Has Standing*

Relying on *Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055 (*Lockyer*), the Police Protective League argues the City does not have standing to appeal or to raise its constitutional arguments. In *Lockyer* a city clerk refused to enforce then-existing provisions of California's marriage statutes that limited "the granting of a marriage license and marriage certificate only to a couple comprised of a man and a woman," after the mayor of the city determined the marriage statutes violated the California Constitution. (*Id.* at pp. 1067, 1070.)

---

[5]     The trial court stayed the injunction "until either (1) the time to file an appeal has expired and no timely notice of appeal has been filed or (2) a timely notice of appeal is filed and the Court of Appeal issues a remittitur or the appeal is dismissed." Thus, the injunction is currently stayed.

8

Ruling the clerk could not refuse to enforce the statutes, the California Supreme Court stated that, "under California law, the determination whether a statute is unconstitutional and need not be obeyed is an exercise of judicial power and thus is reserved to those officials or entities that have been granted such power by the California Constitution." (*Id.* at p. 1093.) Therefore, the Supreme Court held, "a local public official, charged with the ministerial duty of enforcing a statute, generally does not have the authority, in the absence of a judicial determination of unconstitutionality, to refuse to enforce the statute on the basis of the official's view that it is unconstitutional." (*Id.* at p. 1082.) According to the Police Protective League, because the City has a ministerial duty to comply with section 148.6, subdivision (a)(2), the City may not refuse to comply because it believes the statute is unconstitutional.

This argument does not implicate the City's standing to appeal. "Under Code of Civil Procedure section 902, '[a]ny party aggrieved' may appeal a judgment." (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 263.) "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re. K.C.* (2011) 52 Cal.4th 231, 236; see *County of Riverside v. Public Employment Relations Bd.* (2016) 246 Cal.App.4th 20, 27.) An aggrieved party includes "the party against whom an appealable order or judgment," including an injunction, "has been entered." (*Ely v. Frisbie* (1861) 17 Cal. 250, 251; see *County of Riverside*, at p. 27.) The City is a party against whom an appealable judgment that includes an injunction has been entered. And the City's interests are not remote—the judgment

9

enjoins the City from continuing to engage in a prior course of conduct (accepting unsigned complaints alleging misconduct by a peace officer). That is all that is required for standing to appeal. (See *K.C.*, at p. 237 ["standing to appeal is construed liberally, and doubts are resolved in its favor"].)[6]

The Police Protective League's argument, more properly framed, is that under *Lockyer* the City's assertion that section 148.6 is unconstitutional is not a valid defense to the Police Protective League's request for an injunction ordering it to comply with the statute.[7] The Police Protective League, however, forfeited this argument by not raising it in the trial court. (See *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 920, fn. 3; *Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 357.) In addition, as the City argues, the California Supreme

---

[6] The Police Protective League similarly asserts that the constitutionality of section 148.6 is a "nonjusticiable" issue. This, too, is incorrect. "California courts decide only justiciable controversies and do not resolve lawsuits that are not based on an actual controversy." (*Bichai v. Dignity Health* (2021) 61 Cal.App.5th 869, 879.) For example, "unripeness and mootness describe situations where there is no justiciable controversy." (*Ibid.*) "Where there is no justiciable controversy the proper remedy is not to render judgment for one side or the other, but to dismiss." (*Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 752.) The Police Protective League effectively admitted there was a justiciable controversy when it filed a lawsuit seeking a judicial declaration and injunction. It also asks us to affirm the judgment, not to vacate the judgment or order the trial court to dismiss the action.

[7] The Court in *Lockyer* did not refer to the issue as one of "standing."

Court in *Lockyer* held only that officials may not refuse to enforce a statute "in the absence of a judicial determination of unconstitutionality." (*Lockyer*, *supra*, 33 Cal.4th at pp. 1067, 1069, 1082.) Here, there is a judicial determination of unconstitutionality—the Ninth Circuit in *Chaker* held section 148.6 violates the First Amendment. As has at least one other federal court. (See *Hamilton v. City of San Bernardino* (C.D.Cal. 2000) 325 F.Supp.2d 1087, 1095.)[8]

B.    *Section 148.6 Is Not an Impermissible Content- or Viewpoint-based Speech Restriction*

1.    *Applicable First Amendment Principles*

Under the First Amendment to the United States Constitution, "governments have "'no power to restrict expression because of its message, its ideas, its subject matter, or its content.""" (*National Institute of Family and Life Advocates v. Becerra* (2018) ___ U.S. ___, ___ [138 S.Ct. 2361, 2371, 201 L.Ed.2d 835]; see *Reed. v. Town of Gilbert* (2005) 576 U.S. 155, 163 [135 S.Ct. 2218, 192 L.Ed.2d 236].) "Content-based regulations 'target speech based on its communicative content.' [Citation.] As a general matter, such laws 'are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" (*National Institute*, at p. ___

---

[8]    We assume without deciding that the decisions in *Chaker* and *Hamilton*, holding section 148.6 violates the United States Constitution, are "judicial determinations of unconstitutionality" that allow the City to assert the statute's unconstitutionality as a defense in this action.

11

[138 S.Ct., at p. 2371]; see *Reed*, at p. 163.) Viewpoint discrimination, where the "[g]overnment discriminat[es] among viewpoints[,] is a 'more blatant' and 'egregious form of content discrimination . . . .'" (*Reed*, at p. 168; accord, *McCullen v. Coakley* (2014) 573 U.S. 464, 482-483 [134 S.Ct. 2518, 189 L.Ed.2d 502].)[9]

### 2. Stanistreet

In *Stanistreet* a jury convicted the defendant of violating section 148.6. (*Stanistreet*, *supra*, 29 Cal.4th at p. 501.) The Court of Appeal reversed the judgment, holding section 148.6 was unconstitutional under the First Amendment "because it proscribes knowingly false accusations of misconduct against peace officers only and not against others," thereby "selectively prohibit[ing] expression because of its content. (*Ibid.*) The California Supreme Court reversed. The Supreme Court acknowledged the statute was a content-based speech restriction because it criminalized false allegations of misconduct against peace officers (only), and not (for example) firefighters, paramedics, teachers, and elected officials. (*Id.* pp. 503-504, 508.) But the California Supreme Court held the statute fell within each of the "three categories of content discrimination that . . . are permissible" under the United States Supreme Court's decision in *R.A.V. v. City of St. Paul, Minn.* (1992) 505 U.S. 377

---

[9] The California "state Constitution's free speech provision is 'at least as broad' as [citation] and in some ways is broader than [citations] the comparable provision of the federal Constitution's First Amendment." (*Beeman v. Anthem Prescription Management, LLC* (2013) 58 Cal.4th 329, 341; see Cal. Const., art. I, § 2.) The City does not challenge section 148.6 under the California Constitution.

12

[112 S.Ct. 2538, 120 L.Ed.2d 305] (*R.A.V.*). (See *Stanistreet*, at p. 506.)

In *R.A.V.* the United States Supreme Court identified three permissible types of content-based restrictions that do not "pose [the] threat" that "'the Government may effectively drive certain ideas or viewpoints from the marketplace . . . .'" (*R.A.V., supra,* 505 U.S. at p. 387.) The first is where "the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable." (*Id.* at p. 388.) The second is where the speech is "associated with particular 'secondary effects' of the speech, so that the regulation is '*justified* without reference to the content of the . . . speech . . . .'" (*Id.* at p. 389.) And the third is where "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." (*Id.* at p. 390.) As we will discuss in more detail, the California Supreme Court in *Stanistreet* held all three exceptions applied to section 148.6, subdivision (a)(2), because of the state's requirement, unique to peace officers, that agencies must investigate and retain a record of all complaints of misconduct. (*Stanistreet, supra,* 29 Cal.4th at pp. 508-510.)

### 3. Chaker

Three years after the California Supreme Court decided *Stanistreet*, the United States Court of Appeals for the Ninth Circuit held in *Chaker, supra,* 428 F.3d 1215 that section 148.6 violated the First Amendment. In *Chaker* a jury convicted the defendant in California state court of violating section 148.6. (*Id.* at p. 1217.) The defendant filed a petition for writ of habeas corpus in the United States District Court, alleging section 148.6 violated the First Amendment. The district court denied the

petition, but the Ninth Circuit reversed. (*Id.* at p. 1218.) The Ninth Circuit held section 148.6 was an impermissible viewpoint-based speech restriction because "[o]nly knowingly false speech *critical* of peace officer conduct during the course of a complaint investigation [was] subject to prosecution under section 148.6," while "[k]nowingly false speech supportive of peace officer conduct [was] not similarly subject to prosecution." (*Id.* at p. 1228.) The Ninth Circuit in *Chaker* also rejected as a valid basis for the restriction the "state's asserted interest in saving valuable public resources and maintaining the integrity of the complaint process." (*Id.* at p. 1227.)[10]

### 4. *The City's Constitutional Challenge Is Inconsistent with the Supreme Court's Analysis in* Stanistreet

Relying on *Chaker*, the City argues section 148.6 "is a flagrant content and viewpoint-based restriction on speech, applying only to knowingly false statements against a police officer but not to knowingly false statements in favor of police officers . . . ." The City also argues the Supreme Court's decision in *Stanistreet* has "nothing to do" with the City's argument because "*Stanistreet* never considered whether Section 148.6's conflicting treatment of false complaints and false commendations was an acceptable regulation of speech."

We read *Stanistreet* differently. True, the Supreme Court in *Stanistreet* did not reject the exact argument the City now makes for why section 148.6 is an impermissible content- and

---

[10] The court in *Chaker* discussed *R.A.V.*, but did not analyze the three exceptions to content-based speech restrictions the California Supreme Court in *Stanistreet* applied to section 148.6.

14

viewpoint-based speech restriction.  But the California Supreme Court in *Stanistreet* held all "three categories of content discrimination [the United States Supreme Court identified in *R.A.V.*] that do not threaten to drive ideas or viewpoints from the marketplace and hence are permissible . . . apply here." (*Stanistreet*, *supra*, 29 Cal.4th at p. 508.)  And the California Supreme Court's analysis of why the three *R.A.V.* exceptions apply to section 148.6 applies to the City's arguments.

Regarding the first *R.A.V.* exception—where "the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable" (*R.A.V.*, *supra*, 505 U.S. at p. 388)—the California Supreme Court held:  "The reason the entire class of speech at issue—knowingly false statements of fact—is proscribable has 'special force' [citation] when applied to false accusations against peace officers." (*Stanistreet*, *supra*, 29 Cal.4th at p. 508.)  The California Supreme Court explained that, when "a person makes a complaint against a peace officer," the "agency receiving the complaint is legally obligated to investigate it and to retain the complaint and resulting reports or findings for at least five years" and that therefore "the potential harm of a knowingly false statement is greater . . . than in other situations." (*Ibid.*)  This reasoning applies whether section 148.6 is viewed as a restriction based on whom the complainant accuses of misconduct (e.g., police officer or firefighter) or as a restriction based on whether a person is accusing an officer of misconduct or commending the officer for his or her service.  When a person commends an officer, an agency is not legally obligated to investigate or retain the commendation.  Section 832.5 requires agencies to investigate only "complaints by members of the public" and to retain the

15

"complaints and any reports or findings relating to these complaints . . . ."  (§ 832.5, subd. (a)(1), (2).)

As for the second *R.A.V.* exception—where the category of proscribed speech is "associated with particular 'secondary effects' of the speech" (*R.A.V.*, *supra*, 505 U.S. at p. 389)—the California Supreme Court in *Stanistreet* held "knowingly false accusations of misconduct against a peace officer have substantial secondary effects—they trigger mandatory investigation and record retention requirements" that do not apply to other persons.  (*Stanistreet*, *supra*, 29 Cal.4th at p. 641.) In addition, "[p]ublic resources are required to investigate these complaints, resources that could otherwise be used for other matters; the complaints may adversely affect the accused peace officer's career, at least until the investigation is complete; and the complaints may be discoverable in criminal proceedings." (*Ibid.*)  And again, (false) commendations of officers do not trigger mandatory investigation and retention requirements that demand use of public resources.[11]  It is hard to see, and the City does not explain, how false statements commending an officer or

_____

[11]    Quoting *Chaker*, *supra*, 428 F.3d at page 1226, the City argues "'a peace officer or witness who lies during an investigation is equally to blame for wasting public resources by interfering with the expeditious resolution of an investigation.'" A peace officer or a witness who makes false statements during an investigation is certainly blameworthy.  But once a complaint is filed, an agency must complete an investigation of the misconduct allegations; the marginal cost and additional "waste" of public resources caused by investigating false statements made after the complaint are more difficult to quantify.  In contrast, a person who chooses to file a knowingly false complaint necessarily wastes public resources by triggering the investigation.

16

defending an officer against alleged misconduct could adversely affect anyone's career. While complaints against an officer remain in the officer's personnel file and may be discoverable in future criminal proceedings where the officer is a witness, false statements defending the officer and accusations by an officer or against a complainant are less likely to surface.

On the final *R.A.V.* exception—where "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot" (*R.A.V.*, *supra*, 505 U.S. at p. 390)—the California Supreme Court in *Stanistreet* held there was "no realistic possibility of official suppression of ideas." (*Stanistreet*, *supra*, 29 Cal.4th at p. 473.) The California Supreme Court stated the Legislature did not suppress "all complaints of police misconduct, only knowingly false ones . . . ." (*Ibid.*) According to the California Supreme Court, the Legislature did not render complaints critical of peace officers a "'disfavored subject'" because such complaints were, "in other respects, favored." The Legislature actually "elevate[d] the status" of complaints against peace officers by "requir[ing] their investigation and retention of records" and, in doing so, sought only to strike a balance by penalizing "those who invoke that status with knowingly false complaints." (*Ibid.*)

The Supreme Court's analysis in *Stanistreet* again applies whether section 148.6 is considered a restriction based on whom the complainant accuses of misconduct or a restriction based on whether the speaker complains about or commends a peace officer. Because the Legislature elevated the status of misconduct complaints against peace officers by imposing mandatory investigation and retention requirements—an elevation it did not extend to other comments about peace

17

officers—there is no realistic possibility the Legislature intended to suppress the viewpoint of speakers critical of such officers. Therefore, section 148.6 does not "raise[ ] the specter that the Government [was attempting to] drive certain ideas or viewpoints from the marketplace . . . ." (*Stanistreet*, *supra*, 29 Cal.4th at p. 508, citing *R.A.V.*, *supra*, 505 U.S. at p. 388.)

The City does not meaningfully explain why the California Supreme Court's analysis in *Stanistreet* of the third exception in *R.A.V.* would not apply to the City's viewpoint-based argument. Instead, the City urges us to adopt the reasoning of *Chaker* and of the two concurring justices in *Stanistreet* who would have held the third exception in *R.A.V.* did not apply to section 148.6. The concurring opinion in *Stanistreet* concluded there was a realistic possibility that criminalizing even false complaints against peace officers would suppress legitimate ones. (See *Stanistreet*, *supra*, 29 Cal.4th at pp. 513-514 (conc. opn. of Werdegar, J.).) But our role is not to second guess a majority opinion of the California Supreme Court, however persuasive the reasoning of concurring or dissenting opinions may be. (See *Jeld-Wen, Inc. v. Superior Court* (2005) 131 Cal.App.4th 853, 868 ["an appellate court may not properly disregard Supreme Court authority in favor of a [different] ruling that it prefers"]; *In re Marriage of Bryant* (2001) 91 Cal.App.4th 789, 795 ["A principle stated in a California Supreme Court opinion is not the opinion of the court unless it is agreed to by at least four of the justices."].)

The City argues that, because "*Stanistreet* and *Chaker* considered very different content-based distinctions," and "[b]ecause an opinion has no authority regarding an issue it did not address," we can follow the Ninth Circuit's holding in *Chaker* rather than the California Supreme Court's holding in

18

*Stanistreet.* We cannot. Even statements by the California Supreme Court that do "not possess the force of a square holding may nevertheless be considered highly persuasive, particularly when made . . . after careful consideration, or in the course of an elaborate review of the authorities . . . ." (*Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1472-1473.) Although the specific arguments the California Supreme Court rejected in *Stanistreet* are somewhat different from those the City advances here, the Supreme Court's reasoning in *Stanistreet* applies. That's enough to control our decision here. (See *Pogosyan v. Appellate Division of Superior Court* (2018) 26 Cal.App.5th 1028, 1037 ["we must examine the questions actually presented" to the Supreme Court and how the Supreme Court's "reasoning led to the statements at issue to determine the extent to which we must—or should—follow them"]; see also *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1093 [following the "Supreme Court's dicta" where the appellant did not identify "a compelling reason for rejecting [the] Supreme Court's statements"].)[12]

---

[12] The City's insistence that the California Supreme Court "considered" a different content-based distinction than the one the City makes here is incorrect. In *Stanistreet* the respondents devoted an entire section of their brief in the Supreme Court to a viewpoint discrimination challenge to section 148.6 that was essentially identical to the City's argument. (See *People v. Stanistreet*, No. S102722, Answer Brief on the Merits, filed May 24, 2002, at p. 17.)* For example, the respondent in *Stanistreet* argued in its brief: "The statute and the required statutory advisory make it clear that only knowingly false statements 'AGAINST AN OFFICER' can be criminally punished. [Citation.] However, there is no threat of criminal punishment for knowingly false statements that the officer might make about

19

The City also argues *Stanistreet* has "questionable legitimacy in the wake of" the United States Supreme Court's decision in *U.S. v. Alvarez* (2012) 567 U.S. 709 [132 S.Ct. 2537, 183 L.Ed.2d 574]. In *Alvarez* six justices of the United States Supreme Court held the Stolen Valor Act of 2005—which made it a crime for a person to falsely represent he or she was awarded the Congressional Medal of Honor—violated the First Amendment. (See *id.* at p. 715; *id.* at p. 730 (conc. opn. of Breyer, J.).) A plurality of the United States Supreme Court stated there is no "general exception to the First Amendment for false statements." (*Id.* at p. 718.) In *Stanistreet* the California Supreme Court stated that "knowingly false statements of fact are constitutionally unprotected." (*Stanistreet, supra,* 29 Cal.4th at pp. 505-506.) Seizing on the difference in High Court language, the City argues *Alvarez* overruled the "legal pillar upon which the *Stanistreet* holding rested." The City, however, reads far too much into the California Supreme Court's statement in *Stanistreet.* Despite stating that false speech was "unprotected," the California Supreme Court recognized that "constitutional protection is not withheld from all such" false statements even assuming they, "by themselves, have no constitutional value." (*Id.* at p. 637.) More importantly, the California Supreme Court

the citizen in response to the complaint." (*Id.* at p. 18, capitalization in original.)

    \* We take judicial notice of the respondent's answer brief in *Stanistreet* "for the purpose of determining the procedural posture of [the] case before the" California Supreme Court. (*Davis v. Southern California Edison Co.* (2015) 236 Cal.App.4th 619, 632, fn. 11; see Evid. Code, §§ 452, subd. (d), 459; *People v. Sanchez* (1995) 12 Cal.4th 1, 85, fn. 10 [taking judicial notice of a brief filed in a different appeal], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390.)

assumed a content-based restriction on even unprotected speech would violate the First Amendment unless one of the exceptions the United States Supreme Court enumerated in *R.A.V.* applied. (See *id.* at p. 638.)[13]

Finally, the City contends that, because the Ninth Circuit in *Chaker* and at least one district court have held section 148.6 violates the First Amendment,[14] the City "faces real consequences if it enforces section 148.6 by including the admonition." That may be—the City does seem caught between the Scylla of *Chaker* and the Charybdis of *Stanistreet.* But as a California intermediate appellate court, we must, when considering federal questions, "'follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the same question differently.'" (*Winns v. Postmates Inc.* (2021)

---

[13] Other language in *Alvarez* supports the California Supreme Court's holding in *Stanistreet* that section 148.6 does not violate the First Amendment. The plurality in *Alvarez* identified several "examples of regulations on false speech" it did not intend to undermine, including the prohibition in title 18 United States Code section 1001 "on false statements made to Government officials, in communications concerning official matters . . . ." (*United States v. Alvarez, supra*, 567 U.S. at p. 720.)

[14] At least one state supreme court, however, has upheld a statute similar to section 148.6 against a challenge essentially identical to the City's, disagreeing with the Ninth Circuit's decision in *Chaker.* (See *State v. Crawley* (Minn. 2012) 819 N.W. 2d 94, 109, 114 ["Because speech that is supportive of peace officer conduct does not fall within the unprotected category of defamation, the statute does not discriminate on the basis of viewpoint."], cert. den. 568 U.S. 1212 [133 S.Ct. 1493, 185 L.Ed.2d 548].)

21

66 Cal.App.5th 803, 811; see *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 619.) Unless and until the California Supreme Court reconsiders its decision in *Stanistreet* (or the United States Supreme Court considers the constitutionality of section 148.6 or an analogous statute), we may not decide section 148.6 constitutes an impermissible restriction on content-based or viewpoint-based speech.

Which leaves the City in a practical quandary: The City must either disobey a state court injunction or enforce a statute federal courts have held is unconstitutional and cannot be enforced. The City currently has a temporary reprieve from this dilemma because the trial court stayed the injunction until this court issues its remittitur, which will not occur until the Supreme Court rules on a petition for review, if one is filed (or after the time to file such a petition expires). In the absence of intervention by the California Supreme Court (or the United States Supreme Court), the stay will expire, and the injunction will take effect.

C.   *The Advisory and Signature Requirements of Section 148.6 Do Not Chill Protected Speech*

The City also argues section 148.6, subdivision (a)(2), violates the First Amendment by placing an impermissible burden on speech. According to the City, the requirement that complainants sign an advisory containing "a preemptive and explicit threat of criminal prosecution" for the filing of false complaints also deters people from filing good faith complaints.

The California Supreme Court in *Stanistreet* rejected this argument. The Supreme Court specifically considered whether the requirement in section 148.6, subdivision (a)(2), that

22

complainants read and sign an admonition explaining the "criminal sanction for knowingly false complaints" demonstrated that "official suppression of ideas [was] indeed afoot." (*Stanistreet*, *supra*, 29 Cal.4th at p. 510.)  The Supreme Court held it did not:  "That admonition merely advises complainants of the law and impresses on them the significance of the formal complaint.  Warning people of the consequences of a knowingly false complaint is no more impermissible than advising people they are signing a document or testifying under penalty of perjury.  The explanation and admonition do not invalidate the statute."  (*Ibid*.)  Absent a contrary ruling by the United States Supreme Court, we may not second guess the California Supreme Court on this (or any) issue.

> D. *The City Forfeited Its Argument Section 148.6 Violates the First Amendment by Prohibiting Anonymous Complaints*

Finally, the City contends for the first time, on appeal, section 148.6, subdivision (a)(2), violates the First Amendment because, by requiring complainants to sign the admonition, it prohibits persons from anonymously reporting government misconduct.  This is one argument the California Supreme Court in *Stanistreet* did not consider.

"[T]he First Amendment right of freedom of speech includes the right to remain anonymous," at least for some types of speech.  (*Huntley v. Public Utilities Commission* (1968) 69 Cal.2d 67, 73.)  "'[J]udicial recognition of the constitutional right to publish anonymously is a long-standing tradition . . . . "Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices . . . either

23

anonymously or not at all."'" (*John Doe 2 v. Superior Court* (2016) 1 Cal.App.5th 1300, 1310.) The United States Supreme Court has recognized the right to speak anonymously, for example, when distributing handbills and pamphlets (see, e.g., *Watchtower Bible Tract Society of New York, Inc. v. Village of Stratton* (2002) 536 U.S. 150, 166-167 [122 S.Ct. 2080, 153 L.Ed.2d 205]; *McIntyre v. Ohio Elections Com.* (1995) 514 U.S. 334, 357 [115 S.Ct. 1511, 131 L.Ed.2d 426]; *Talley v. California* (1960) 362 U.S. 60, 64-65 [80 S.Ct. 536, 4 L.Ed.2d 559]) and when circulating ballot-initiative petitions (see *Buckley v. American Constitutional Law Foundation, Inc.* (1999) 525 U.S. 182, 199-200 [119 S.Ct. 636, 112 L.Ed.2d 599].)

There may be some merit to the City's anonymity argument. The City, however, forfeited the argument by not making it in the trial court. (See *Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 154 ["As a general rule, 'constitutional issues not raised in earlier civil proceedings are waived on appeal.'"]; *In re M.H.* (2016) 1 Cal.App.5th 699, 713 [by failing to raise the constitutional challenge in the trial court, appellant forfeited the argument a statute violated the First Amendment]; *Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 585 [constitutional issues not raised in the trial court are forfeited on appeal].) Indeed, applying the forfeiture rule here is particularly appropriate given that "there is no absolute right to anonymity" and that a court must balance the right against the government's interest in requiring disclosure of identifying information. (*Huntley v. Public Utilities Commission*, *supra*, 69 Cal.2d at p. 75.) In this case neither side presented evidence of the state's interests in requiring complainants to sign the advisory required by section

24

148.6, subdivision (a)(2), so that the trial court could balance those interests against citizens' right to file complaints of police misconduct anonymously.  (See *In re N.R.* (2017) 15 Cal.App.5th 590, 598 [where an argument "involves an issue of fact rather than a pure question of law," it is "forfeited by appellant's failure to raise it below"]; *Blankenship v. Allstate Ins. Co.* (2010) 186 Cal.App.4th 87, 105 ["arguments raised for the first time on appeal" that "involve questions of fact" are forfeited]; *Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1488 [an argument is forfeited "if it was not raised below and requires consideration of new factual questions"].)

## DISPOSITION

The judgment is affirmed.


                                SEGAL, J.


We concur:


      PERLUSS, P. J.


      WISE, J. [*]

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PERLUSS, P. J., Concurring

I fully agree with, and have signed, the court's opinion adhering to the Supreme Court's decision in *People v. Stanistreet* (2002) 29 Cal.4th 497, holding Penal Code section 148.6 (section 148.6) is not an unconstitutional restraint on speech. I add this grace note to briefly emphasize several issues our opinion does not address because the City focused its defense of the Police Protective League's lawsuit on the rights of individuals seeking to complain about police misconduct, not the City's own rights and responsibilities.

First, Los Angeles is a charter city. (See Gov. Code, § 34101.) As the Supreme Court explained in *State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547 (*City of Vista*), "Charter cities are specifically authorized by our state Constitution to govern themselves, free of state legislative intrusion, as to those matters deemed municipal affairs. Article XI, section 5, subdivision (a) of the California Constitution provides: 'It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith.'" (*Id.* at p. 555; italics omitted.) Known as the home rule doctrine, the broad authority of charter cities was originally "'enacted upon the principle that the municipality itself knew better what it wanted and needed than the state at large, and to give that municipality the exclusive privilege and right to enact

direct legislation which would carry out and satisfy its wants and needs.' [Citation.] The provision represents an 'affirmative constitutional grant to charter cities of "all powers appropriate for a municipality to possess . . ." and [includes] the important corollary that "so far as 'municipal affairs' are concerned," charter cities are "supreme and beyond the reach of legislative enactment."'" (*Id.* at pp. 555-556; see *Johnson v. Bradley* (1992) 4 Cal.4th 389, 394-398; *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 12 (*California Fed. Savings*).)

Article XI, section 5, subdivision (b), of the California Constitution sets out a nonexclusive list of four core categories that are, by definition, "municipal affairs." First on that list is "the constitution, regulation, and government of the city police force." (See *Johnson v. Bradley, supra,* 4 Cal.4th at p. 398.) Thus, if the City authorizes its police department to accept complaints of misconduct without a signed advisory, it may not be within the authority of the Legislature to prohibit it from doing so. (See generally *City of Huntington Beach v. Becerra* (2020) 44 Cal.App.5th 243, 254, 259 ["[h]ome rule authority under article XI, section 5 of the California Constitution does not mean charter cities can never be subject to state laws that concern or regulate municipal affairs"; the Supreme Court's analytical framework articulated in *City of Vista* and *California Fed. Savings* "appl[ies] to a state law that is claimed to intrude on a charter city's right under article XI, section 5(b) to create, regulate, and govern a police force"].)

Second, although section 148.6 provides a law enforcement agency "shall" require a complainant to read and sign the advisory, "shall" can be construed as mandatory or directory.

2

(*People v. Ledesma* (1997) 16 Cal.4th 90, 95.) "When, as here, a statute sets forth a procedural requirement but does not set forth any penalty for noncompliance, a party may reasonably question whether the statute is merely directory, not mandatory. '[T]he "mandatory" or "directory" designation does not refer to whether a particular statutory requirement is obligatory or permissive, but instead denotes '"whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates."'" (*People v. Gray* (2014) 58 Cal.4th 901, 909; see *Cal-Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 673 ["'provisions defining time and mode in which public officials shall discharge their duties and which are obviously designed merely to secure order, uniformity, system and dispatch in the public bureaucracy are generally held to be directory'"].) Even if section 148.6 applies to the City's regulation of its police department despite the home rule doctrine, it is not clear—and we do not decide— that the City violates the statute by accepting a complaint of police misconduct without a signed advisory.[15]

Third, the import of a prohibition against "accepting an allegation of misconduct against a peace officer" without the signed advisory—the language of section 148.6 repeated in the injunction issued by the superior court—is, at best, unsettled. In an opinion issued in 1996 shortly after the enactment of

---

[15] Presumably, an appellate court decision that section 148.6 could not apply to the City under the home rule doctrine or that it was directory, not mandatory, would provide a basis for the City to seek to dissolve the injunction we affirm today.

3

section 148.6, Attorney General Daniel Lungen concluded, "A law enforcement agency may investigate an allegation of police misconduct even though the prescribed information advisory form has not been signed by the person filing the allegation." (79 Ops.Cal.Atty.Gen. 163 (1996).) The Attorney General explained, "The plain wording and legislative history of section 148.6, along with the governing principles of statutory construction, including the duty to uphold the statute's constitutional validity, all support the conclusion that a law enforcement agency does not lose its power and jurisdiction to investigate allegations of police misconduct even though it fails to secure the signature of the complainant on the advisory form." (*Id.* at p. 167.) What, if anything, the City and its police department may do after receiving, but not "accepting," an unsigned or anonymous complaint is yet another issue we do not decide.


PERLUSS, P. J.


4